UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HERBERT E. ROBERTSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-02043-TWP-CSW |
| | ) |
| KONKLE SGT., | ) |
| DEME Officer, | ) |
| OAKSUN, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Momar Deme ("Officer Deme"), Eric Konkle ("Sergeant Konkle"), and Augustine Okosun ("Officer Okosun") (collectively, "Defendants") (Dkt. 36). Plaintiff Herbert E. Robertson ("Mr. Robertson") initiated this action on October 18, 2022, alleging the Defendants violated his Eighth Amendment rights through deliberate indifference when he slipped and fell on trash while an inmate at Pendleton Correctional Facility ("Pendleton") (Dkt. 2). Defendants argue they are entitled to summary judgment because the conditions of Pendleton did not present a sufficiently serious hazard that rose to the level of an Eighth Amendment violation, and they deny that they were deliberately indifferent to the conditions of Pendleton. For the reasons stated below, summary judgment is **granted**.

## I.   BACKGROUND

On a motion for summary judgment, the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572 (7th Cir. 2021).

In 2021, Mr. Robertson was an inmate with the Indiana Department of Corrections ("IDOC") and housed at Pendleton (Dkt. 2 at 2). He was held in G Cell House during the events related to his Complaint. *Id.* at 4. The Defendants were correction officer employees of the IDOC working at Pendleton during the relevant time. (Dkt. 16 at 1).

G Cell House is an administrative segregation unit and persons incarcerated in G Cell House were restrained any time they were moved (Dkt. 37-1 at 11:9–14). On February 7, 2021, Mr. Robertson sustained an injury which caused "limited mobility," "severe pain," and caused his leg to "give out" sometimes. *Id.* at 14:20–24, 15:11–12. On May 22, 2021, Officers Deme and Okosun escorted Mr. Robertson from his cell to take a shower. *Id.* at 18:6–13. Mr. Robertson describes the events as follows:

> Officer Deme and Okosun came to my cell and told me it was shower time, had me cuff up, they placed the security strap on my handcuffs. Officer Okosun was walking behind me up against the security fencing. Officer Deme was on my left arm, holding me, helping me to limp along . . . As we're going down the range, there's water on the floor, there's a little bit of trash, different things of that nature . . . [w]hen we go to down to the trash bag, there was nowhere for us to go. It was almost at the end of the range. When we got there, you know, I went to stop and he said, "[w]hen you're ready, step over." I went to step over and my leg gave out and it pulled me and him both to the—forward to the ground.

*Id.* at 18:21–19:21.

Mr. Robertson's escort to the shower was captured on facility video cameras (Dkt. 37-2). The video evidence shows the range containing a few pieces of trash and one trash bag at the end of the range pushed up against the fence. *Id.* at 1:30. Officers Deme and Okosun led Mr. Robertson down the hallway without incident while one officer held Mr. Robertson's left elbow from behind. *Id.* at 1:30–2:03. As Mr. Robertson approached the trash bag, he looked down and his leg gave out. *Id.* at 1:58–2:04. He then fell towards the fence with his right knee landing on top of the trash bag.

*Id.* at 2:04–2:10. Officers then helped him regain his balance. *Id.* at 2:10–2:14. Mr. Robertson was then taken to the urgent care center for medical attention (Dkt. 37-1 at 20:1–25).

On June 29, 2021, Mr. Robertson was seen by Dr. Knieser, who evaluated him and found tenderness in his right knee and moderate pain with motion (Dkt. 37-3 at 4).

## II. LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar*, 985 F.3d at 572–73. The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only must consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); but it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572 (7th Cir. 2017).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### III.     DISCUSSION

Mr. Robertson alleges the Defendants violated his Eighth Amendment rights by being deliberately indifferent towards him and failing to provide non-hazardous conditions which resulted in him being injured. (Dkt. 2 at 8). The summary judgment record contains video evidence of the incident and Mr. Robertson does not dispute the authenticity of the video evidence (Dkt. 37-2). "[W]here a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to [his] health and safety." *Id.* (citations omitted). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind—that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

Defendants argue that the video evidence shows the conditions which led to Mr. Robertson's fall do not rise to the level of an objectively serious harm and that they were not deliberately indifferent towards such conditions (Dkt. 38 at 6–7). The Court agrees.

In *Anderson v. Morrison*, prison officials handcuffed the plaintiff, an inmate, behind his back, ordered him to walk down stairs that were covered (and had been for several days) with food, milk and other garbage, and refused his request to help him walk. 835 F.3d 681, 682 (7th Cir. 2016). The plaintiff then slipped and fell down a flight of thirteen stairs and was knocked unconscious. *Id*. The Seventh Circuit found that "[f]orcing someone to walk handcuffed and unaided down stairs needlessly strewn with easily removable milk, food, and garbage . . . poses an unreasonable peril." *Id.* at 683.

In *Pyles v. Fahim*, the plaintiff filed a grievance complaining of slippery conditions near the facility's showers. 771 F.3d 403, 405 (7th Cir. 2014). Then, five weeks later, the plaintiff fell on the wet stairs when returning from the showers and suffered a loss of consciousness and temporary paralysis from the waist down. *Id.* The plaintiff asserted a deliberate indifference claim and the Seventh Circuit held that, "[t]he hazard about which Mr. Pyles complains is not sufficiently serious to invoke the Eighth Amendment." *Id.* at 410. The Court reasoned that "[f]ederal courts consistently have adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement." *Id.*

In *Bell v. Ward*, the plaintiff "slipped on a wet floor in the common area of his cell block and struck his chin on a steel stool, resulting in a gash that required four stitches." 88 Fed. Appx. 125, 126 (7th Cir. 2004). The plaintiff asserted an Eighth Amendment deliberate indifference claim for failure to clean up water on the floor. *Id.* The Court held that such assertions "do not suggest a substantial risk of serious harm that reflects the deliberate indifference required to impose liability

under the Eighth Amendment." *Id.* at 127 (citing *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993)) ("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment.").

The conditions within G Cell House that led to Mr. Robertson's slip and fall injury do not rise to the level of a serious risk of harm. The video evidence shows that the range walkway contained a few scattered pieces of trash, and one trash bag pushed up against the fence on the range, leaving multiple feet for space to walk (Dkt. 37-2 at 0:00–1:30). Mr. Robertson's assertion that "the small range walkway was cluttered with food trays, clothing, trash, water, and trash bags blocking the walkway" is not supported by the video evidence (Dkt. 2 at 4). Mr. Robertson's claims that he had to "walk through the obstacles, [and] on top of the obstacles" is also not supported by the video evidence. *Id.* Further, the singular trash bag pushed up against the fence at the end of the range does not rise to the "obstacle course" of milk, food, and rubbish in *Anderson*. 835 F.3d at 683.

In addition, the video evidence shows that the trash bag was not the cause of Mr. Robertson's fall as his leg gave out just before making contact with the trash bag (Dkt. 37-2 at 2:00–2:06). Mr. Robertson also testified that his previous leg injury caused his leg to give out from time to time (Dkt. 37-1 at 14:20–24, 15:11–12). The video evidence also shows that the trash bag was pushed up against the fence leaving room for Mr. Robertson to walk, but rather than attempt to avoid the trash bag, he walked directly into it (Dkt. 37-2 at 2:00–2:06). Mr. Robertson implicitly admits in his Response that there was room to walk past the trash bag stating, "the fact is, [Sergeant] Konkle is on the video walking right past the trash bag, towards Plaintiff as he is being escorted by [Defendants]." (Dkt. 46 at 8). Such an admission contradicts Mr. Robertson's assertion that there was nowhere to walk.

In his Response, Mr. Robertson disputes Defendants' statements of the facts (Dkt. 46). Specifically, he argues that his leg did not give out before the trash bag stating "when I looked at [officer Deme, he said,] 'there[']s nowhere to go. Just step over.' And we both went to step over, and again like I said, my leg gave out." *Id.* at 5. He also argues that "its undisputed that the ranges were cluttered with hazards . . . [and] that several offenders were instructed to step on, or step over obstacles blocking the range." *Id.* at 15. However, the video evidence does not comport with Mr. Robertson's assertions.

Mr. Robertson disputes other facts in his response arguing that Defendants knew about his knee injury but none of his disputes are material as the trash bag pushed up against the fence clearly does not rise to the level of a substantial risk of serious harm. *Giles*, 914 F.3d at 1051 (explaining that a conditions of confinement claim includes both an objective and subjective component).

Mr. Robertson cites *Velez v. Johnson* arguing that, "a defendant need not know the precise nature of the risk to be found deliberately indifferent, as long as he knows that a serious risk exists." (Dkt. 46 at 14–15);395 F.3d 732, 736 (7th Cir. 2005). First, *Velez* does not hold that the defendant may assert a claim of deliberate indifference if they know of a serious risk. Rather, *Velez* states that prison officials may not "put their heads in the sand" in light of being made aware of a serious risk in some form. 395 F.3d at 736. There is no such ignorance present in this case.

Second, the facts of *Velez* are particularly horrid and nothing like the facts in this case. In *Velez*, the plaintiff was put into a cell with another inmate who began acting "funny." *Id.* at 734. After the plaintiff's transfer request was denied, the other inmate held a razor blade to the plaintiff's throat before anally raping the plaintiff. *Id.* at 734–35. The plaintiff had notified the prison official of a conflict with the inmate before the incident and then, on the night in question, the plaintiff pushed the emergency call button multiple times and attempted to notify the prison officials in

7

various other ways, but the prison official ignored all attempted emergency notifications. *Id.* at 736. For obvious reasons, the facts of this case are nowhere near *Velez*.

Lastly, the Court will address Mr. Robertson's assertion that, "taking the Plaintiff's evidence and allegations as true; a reasonable jury could conclude that Defendants . . . have been deliberately indifferent . . ." (Dkt. 46 at 21). Mr. Robertson misstates the legal standard at this stage of the litigation. It is true that for the purposes of a motion to dismiss, the Court takes a plaintiff's allegations as true. *See Bielanski v. Cty. Of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). However, on a motion for summary judgment, the Court views the evidence in the light most favorable to Mr. Robertson as the non-movant but will not accept his allegations as true when the video evidence clearly contradicts his allegations. *McCottrell*, 933 F.3d at 661.

The video evidence shows that the range was clear other than a few pieces of trash and a trash bag pushed up against the security fence leaving room to walk. The video also shows that Mr. Robertson's knee buckled before he made contact with the trash bag. But even if Mr. Robertson had tripped on the trash bag, it would not rise to the level of a substantial risk of serious harm which is required for an Eighth Amendment violation. There is no genuine issue of material fact and Defendants' Motion for Summary Judgment is therefore **granted**.

### IV.    CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Dkt. 36) is **GRANTED**. Final Judgment consistent with this Order shall issue separately.

SO ORDERED.

Date:    3/11/2025

*[signature]*

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

HERBERT E. MR. ROBERTSON
885415
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Jordan Douglas Hall
Lewis and Wilkins LLP
hall@lewisandwilkins.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com